UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICIO GONZALEZ-LOPEZ<br><br>Plaintiff,<br><br>v.<br><br>PERFECT TRADING, INC., YI DING, JOHN AND JANE DOES 1-10, *Fictitious unidentified individuals,* ABC CORPORATIONS 1-10, *Fictitious individuals, corporations or other business entities presently unidentifiable,*<br><br>Defendants. | Civ. No. 2:21-cv-12906 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action for negligence, Plaintiff Mauricio Gonzalez-Lopez ("Plaintiff") moves *in limine* to exclude the testimony of Kirk Lawrence Thibault, PhD, D-IBFES[1] ("Thibault"), a biomechanical engineer, pursuant to Fed. R. Evid. 702. Oral argument on the motion was heard on March 26, 2027. For the reasons set forth below, Plaintiff's motion *in limine* is **granted**.

### I. BACKGROUND

#### A. Facts

On February 7, 2020, Plaintiff, a then 37-year-old employee of V-com, Inc. ("V-com"), was at V-com's warehouse unloading a tractor trailer owned by Perfect Trading, Inc.'s ("Perfect Trading") and operated by its driver, Ding Yi ("Yi"). Defendants Perfect Trading and Yi ("Defendants") maintain that Yi remained in his truck throughout the entire unloading of the trailer and only when a V-com employee returned the driver's paperwork and alerted him that his truck was unloaded did he begin to pull the truck forward so that a V-com employee could shut the trailer doors. When the tractor trailer began moving away from the docking area, Plaintiff was walking out of the truck with a box. Plaintiff alleges

---

[1] "The IBFES (International Board of Forensic Engineering Sciences) is an independent board that certifies professionals with a specialty in the forensic engineering sciences." Home | ibfes

that due to the truck's sudden movement forward, he lost his balance, stumbled, and fell out of the truck causing injury to his right foot. In contrast, although there is video surveillance of the incident, Defendants offer Thibault's expert opinion to support their theory that Plaintiff jumped, rather than fell out of the truck. Plaintiff moves to exclude that expert testimony. Trial is scheduled to commence on April 11, 2024.

B. Thibault Expert Report

Thibault's expert report[2] explains that a "sudden change in velocity of one's planted foot relative to one's center of mass may momentarily disturb one's dynamic stability such that one may lose one's balance and fall forward. ... If one cannot step to reestablish a stable base of support, one may fall forward, resulting in a reflexive, protective response that manifests as extending one's arms forward." Thibault Expert Report, at 15. As Thibault describes, the video does not demonstrate a loss of balance, but rather, shows "that [Plaintiff's] body remains stable and upright throughout the entire event. He takes active, deliberate steps with his left and right leg to position his body at the edge of the trailer. He squats and then pushes off with both feet to hop off the trailer and jump to the ground." *Id.* In addition, Thibault notes there is no evidence of injuries, such as to Plaintiff's upper extremities or to his face, torso, and lower extremities, suggesting that Plaintiff lost his balance and fell forward out of the trailer to the ground. *Id.* at 16. In sum, Thibault concludes: "the trailer began to move forward slowly and, in response, Mr. Gonzalez-Lopez stepped to the rear edge of the trailer and jumped to the ground, where the heel of his right foot contacted the ground and sustained a fracture of the calcaneus." *Id.*

II. **DISCUSSION**

Plaintiff challenges Mr. Thibault's testimony as "net opinion"[3] inadmissible under Fed. R. Evid. 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

---

[2] Thibault also observes in his report that the "actual elevation through which [Plaintiff] fell [from the rear of the trailer] is approximately four to four-and-one-half feet" rather than 8 feet as Plaintiff initially alleged. At oral argument on the *in limine* motion, Plaintiff stipulated that the distance of the fall was four to four-and-one-half feet as measured by Thibault.

[3] The net opinion rule "is not a federal evidentiary rule," but "merely a restatement of the well-settled principle that an expert's bare conclusions are not admissible under Rule 702 of the Federal Rules of Evidence." *Zeller v. J.C. Penney Co., Inc.*, 2008 WL 906350, at *7 n.13 (D.N.J. Mar. 31, 2008); *see also Smith v. State Farm Fire & Cas. Co.*, 2023 WL 3561406, at *4 n.2 (D.N.J. May 19, 2023) ("While the net opinion rule is not part of the Federal Rules of Evidence, nor is it an explicit factor enumerated by *Daubert*, courts in this district have analyzed net opinion arguments under Daubert's fit requirement, or on its own as a separate issue."). "Fit" requirement is discussed below.

2

>  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>  (b) the testimony is based on sufficient facts or data;
>  (c) the testimony is the product of reliable principles and methods; and
>  (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under Rule 702, expert testimony will be admissible only if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The proponent of expert evidence must demonstrate its admissibility by a preponderance of the evidence. *Id.* at 592 n. 10. To satisfy these elements of reliability and relevance, Rule 702 requires that: (1) the expert must be qualified to render his or her opinion; (2) the scientific process or methodology employed by the expert in rendering his opinion must be reliable; and (3) the expert's testimony must assist the trier of fact. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). In short, an expert's conclusion must meet the "trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

Plaintiff does not challenge admissibility of the expert report based on Thibault's qualifications (first prong). Thibault has a BS, a Master's Degree, and a Doctorate in Bioengineering from the University of Pennsylvania. Plaintiff does, however, dispute reliability (second prong), which requires that an "expert's opinions must be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d. Cir. 1994) (citations and internal quotations omitted). In this case, Defendants explain that Thibault's opinion is based on the review of "14 specific references, in addition to his education, training, and experience." Def. Opp. at 8. Those 14 references appear to be the video surveillance footage, pleadings, discovery materials, medical records, witness statements, and an inspection of the docking area. As Plaintiff correctly points out, the defense expert's opinion is not derived from any scientific facts pertaining to Plaintiff's fall or jump such as his approximate height, weight, BMI, center of mass, or speed of the truck. The report does not factor in or calculate change in velocity relative to mass or utilize any other mathematical formula or methodology that can be tested.[4] Moreover, despite Thibault's

---

[4] In determining the reliability of expert testimony, trial courts have been directed to consider *Daubert*-related factors such as (1) whether the scientific method or theory can be or has been tested; (2) whether the method or theory has been subject to peer review and publication; (3) the known or potential rate of error when applied; (4) the existence and maintenance of standards and controls; (5) whether the method or theory is generally accepted in the scientific community. *See United States v. Mitchell*, 365 F.3d 215, 234–35 (3d Cir.2004) (listing factors under *Daubert*, 509 U.S. at 593–95, and *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir.1985)).

3

assertion that his analysis relies on "data and methodologies…published in peer-reviewed journals and texts," it is unclear what those sources are. *See* Thibault Report, at 13.

In addition, Thibault's testimony is inadmissible under the third prong. "Fit" refers to the helpfulness of the expert's testimony in assisting the trier of fact. This helpfulness requires a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591–92. As noted above, Thibault's opinion is based on his observation of the video footage and review of discovery from this case rather than from any scientific methodology. Thus, it does not satisfy the precondition of providing a "scientific connection" to the issue at bar. In any event, the video footage of the incident itself is the best evidence of what occurred. Moreover, expert testimony is generally required in situations where a jury of laypersons lacks sufficient knowledge or understanding of the subject matter to form a reasonable opinion. "Expert testimony covering an area known and within the comprehension of the layperson is generally not helpful to the trier of fact and thus inadmissible." *Bryan v. Shah*, 351 F. Supp. 2d 295, 303 n. 14 (D.N.J. 2005); *see, e.g., U.S. v. Torres–Galindo*, 206 F.3d 136, 141 (1st Cir.2000) (finding that expert testimony was improperly admitted because it was likely not helpful, as it covered an area with which the jury, "out of its own experience," was familiar). Here, Thibault's conclusion pertains to a subject matter that is familiar to a layperson: that a "sudden change in velocity of one's planted foot" can cause a person to loss balance and fall forward. After seeing the surveillance video, based on its own experience and knowledge, the jury can assess for itself whether Plaintiff lost his balance and involuntarily fell or purposely and voluntarily jumped off the truck.

On that issue, Defendants seek to establish that Plaintiff's injuries are consistent with and proximately caused by a jump rather than a loss of balance because Defendants assume that "jumping" reflects a deliberate choice not to stay in the truck until it came to a stop. However, Thibault does not (nor could he) opine that because Plaintiff did not lose his balance and instead jumped, Plaintiff must have had the opportunity to proactively choose his course of action despite the truck's sudden movement. That is, the report does not address whether Plaintiff "jumped to the ground" as the result of a deliberate decision or was compelled to do so by the unexpected forward motion of the truck in the opposite direction that he was walking. Therefore, even assuming Plaintiff jumped, Thibault's testimony does not assist a jury in determining whether Plaintiff's injuries were proximately caused by his own decision to exit the truck or because the sudden movement of the truck necessitated him to jump off.

In sum, because Thibault's testimony does not rely on scientific methodology or assist the trier of fact, Plaintiff's motion *in limine* is **granted.**

## III. CONCLUSION

For the reasons noted above, Plaintiff's motion *in limine* to exclude Defendants' biomechanical expert testimony is **granted**.

Dated: 4/2/24

WILLIAM J. MARTINI, U.S.D.J.

5